## IN THE UNITED STATES DISTRICT COURT

## FOR THE WESTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| ERICA NEUBURGER | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO.  6:17-cv-06472 |
| v. | ) | EAW |
| | ) | |
| THE COLLEGE AT BROCKPORT, STATE | ) | |
| UNIVERSITY OF NEW YORK | ) | **PLAINTIFF'S      RESPONSE      TO** |
| Defendant. | ) | **MOTION TO DISMISS** |
| | ) | |

_____

## TABLE OF CONTENTS

**Table of Contents**_____ __ _____ __**p 1**

**Table of Authorities**_____ _____ **p 2-3**

**I.**　　**Preliminary Statement**_____ **p 4-5**

**II.**　　**Procedural Background**_____ **p 5**

**III.**　　**Statement of Facts** _____ **p 5-15**

**IV.**　　**Standard of Review – 12(b)(6) Motion**_____ **p 16**

**V.**　　**Standard of Review – Title IX**_____ **p 16-20**

**VI.**　　**Legal Argument**_____ **p 20-23**

**VII.**　　**Legal Argument**_____ **p 23-25**

**VIII.**　　**Legal Argument**_____ **p 25-26**

**IX.**　　**Punitive Damages**_____ **p 26-27**

**X.**　　**Conclusion**_____ **p 27**

## __TABLE OF AUTHORITIES__

### Cases

_Abdu-Brisson v. Delta Air Lines, Inc.,_ 239 F.3d 456, 467 (2d Cir. 2001))……………20

_Albright v. Oliver_, 510 U.S. 266, 268, 114 S. Ct. 807, 127 L. Ed. 2d 114 (1994)……16

_Baker_ v. _Gold Seal Liquors, Inc._, 417 U.S. 467, 469, n. 1, 41 L. Ed. 2d 243, 94 S. Ct. 2504 (1974)..23

_Bell Atl. Corp. v. Twombly_, 550 U.S. 544, 557, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)

(quotation omitted)………………………………………………………………21

_Bernheim v. Litt,_ 79 F.3d 318, 321 (2d Cir. 1996)……………………………………16

_Burnette v. Carothers,_ 192 F.3d 52, 56 (2d Cir. 1999)………………………………16

_Chambers_ v. _NASCO, Inc._, 501 U.S. 32, 115 L. Ed. 2d 27, 111 S. Ct. 2123 (1991)….23

_Davis v. Monroe County Bd. of Educ., 526 U.S. 629, at 646-47; 119 S. Ct. 1661, 143 L. Ed. 2d 839, 1999_

_U.S. LEXIS 3452, 67 U.S.L.W. 4329, 99 Cal. Daily Op. Service 3861, 99 Daily Journal DAR 4931, 1999_

_Colo. J. C.A.R. 2948, 12 Fla. L. Weekly Fed. S 280 (U.S. May 24, 1999)_………17, 19

_Doe_ v. _University of Illinois,_ 138 F.3d at 661………………………………17

_Fitzgerald v. Barnstable Sch. Comm._, 555 U.S. 246, 255, 129 S. Ct. 788, 172 L. Ed. 2d 582 (2009)

(citations omitted)………………………………………………………………18

_Gebser v. Lago Vista Indep. Sch. Dist._, 524 U.S. 274, 118 S. Ct. 1989, 141 L. Ed. 2d 277 (1998)……18, 19

_Gillman v. Inner City Broad. Corp._, No. 08 Civ. 8909, 2009 U.S. Dist. LEXIS 85479, 2009 WL 3003244,

_*3 (S.D.N.Y. Sept. 18, 2009)_………………………………...22

_Hoover v. Ronwin_, 466 U.S. 558, 587, 104 S. Ct. 1989, 80 L. Ed. 2d 590 (1984) (citing _Conley v. Gibson,_

355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957))………….16

_Iqbal_, 556 U.S. at 678 (citation omitted)………………………………………………22

_Moore_ v. _New York Cotton Exchange_, 270 U.S. 593, 610, 70 L. Ed. 750, 46 S. Ct. 367 (1926)…23

_Murray v. New York Univ. Coll. of Dentistry_, 57 F.3d 243, 248 (2d Cir. 1995)……….16

_New Jersey_ v. _T. L. O._, 469 U.S. 325, 342, n. 9, 83 L. Ed. 2d 720, 105 S. Ct. 733(1985)………17

_Patane v. Clark_, 508 F.3d 106, 113 (2d Cir. 2007)……………………………………22

_Swierkiewicz v. Sorema N.A._, 534 U.S. 506, 514-15, 122 S. Ct. 992, 152 L. Ed. 2d 1

(2002)…………………………………………………………………………..22

*Tinker* v. *Des Moines Independent Community School Dist.*, 393 U.S. 503, 507, 21 L. Ed. 2d 731, 89 S. Ct. 733 (1969)……………………………………………………..17

*Torres v. Pisano*, 116 F.3d 625, 630 n. 3 (2nd Cir.), *cert. denied*, 522 U.S. 997, 118 S. Ct. 563, 139 L. Ed. 2d 404 (1997)……………………………………………………16

*Twombly*, 550 U.S. at 570. ……………………………………………….20, 26

*Twombly*, 550 U.S. at 555……………………………………………..20

*Twombly*, 550 U.S.] at 557, 127 S. Ct. 1955, 167 L. Ed. 2d 929)………………22

*Twombly*, 550 U.S. at 558……………………………………………………22

*United States* v. *Hudson*, 11 U.S. 32, 7 Cranch 32, 34, 3 L. Ed. 259 (1812)......23

*Vernonia School Dist. 47J* v. *Acton*, 515 U.S. 646, 655, 132 L. Ed. 2d 564, 115 S. Ct. 2386(1995)..17

*C. Wright, A. Miller, & E. Cooper,* Federal Practice and Procedure § 3523 (1984)…..23

*Zimmermann v. Assocs. First Capital Corp.*, 251 F.3d 376, 381 (2d Cir. 2001)(quoting *Byrnie v. Town of Cromwell*, 243 F.3d 93, 101 (2d Cir. 2001).........................................19, 20


**Other Authorities**

Fed R. Civ. P. 12(b)(6)…………………………………………………15
Fed. R. Civ. P. 8(a)(2)…………………………………………………20, 21, 26
Fed. R. Civ. P. 8(d)(1)…………………………………………………20, 26
28 U.S.C. § 1367 (1998 ed., Supp. IV)…………………………………23, 24
20 U.S.C 1681(a), 1682 (Title IX)……………………………………5, 16, 17, 18
42 U.S.C. 1981 (a)(b)(1)..............................................................26
45 C.F.R. 86.31………………………………………………………16
Title IX, Section 901(a)………………………………………………18, 19

Plaintiff re-alleges the facts contained in the complaint as though fully incorporated herein.  Plaintiff does hereby respond to Defendant's Motion to Dismiss as follows:

## I.    **PRELIMINARY STATEMENT:**

Plaintiff hereby opposes Defendant's Motion to Dismiss the instant causes of action on the grounds that said causes of action have been properly pled. If Plaintiff's allegations of discrimination, sexually hostile environment, retaliation and negligence are accepted as "true", and all reasonable inferences are drawn in Plaintiff's favor, as gleaned from Plaintiff's allegations, it becomes clear that Plaintiff, at a minimum, is permitted to be heard, and to plead her case for said claims.  As Plaintiff has adequately pled, in her Complaint, and as she duly alleged in her Complaint to the United States Department of Education, Office for Civil Rights in February of 2015 the Defendant failed to respond promptly and equitably to her report of a forcible sexual assault, thereby subjecting Plaintiff to a "sexually hostile environment" in the ensuing months of August-November of 2014. In its Motion to Dismiss, Defendant mistakenly presumes that Plaintiff has sued Defendant for the actual sexual assault alleged to have occurred in May of 2014. In fact, Plaintiff has sued Defendant for its acts and omissions during the months of August through to November of 2014, on the grounds set forth very clearly in the Complaint, the allegations of which are incorporated herein by this reference.

As alleged, Plaintiff Erica Neuburger was  also retaliated against by SUNY Brockport insofar as it refused to allow her to rejoin Defendant's "Ultimate Frisbee" Team during the fall of 2014, because she had made the allegations of Sexual assault against DG. Plaintiff also alleged that Defendant failed to respond promptly and equitably to her report of a forcible sexual assault, which complaint was relayed in July 2014, thereby subjecting Plaintiff to a "sexually hostile environment" in the ensuing months of August-November of 2014.

## II.      **PROCEDURAL BACKGROUND**

Ms. Neuburger sued The College at Brockport, State University of New York ("SUNY Brockport") under 20 U.S.C. § 1681 (Title IX) for claims of discrimination and a sexually hostile environment as well as negligence and retaliation. Ms. Neuburger alleges that such claims arose in connection with events from August 2014 through November 2014 at SUNY Brockport. SUNY Brockport has moved under Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the complaint, and Plaintiff hereby responds as follows:

## III.     **STATEMENT OF FACTS:**

1.  In late November of 2012, a male student with initials DG began talking to Plaintiff outside of class, and they became friendly, and eventually, in February of 2013, romantically involved. COMPLAINT, ¶9.

2.  In March 2013, Plaintiff, Erica Neuburger, ended the relationship with DG. COMPLAINT, ¶10.

3.  Later, in April 2013, Plaintiff and DG restarted their relationship.    COMPLAINT, ¶11.

4.  In August of 2013, Plaintiff joined the "Ultimate Frisbee" team at SUNY Brockport. COMPLAINT, ¶12.

5.  Plaintiff and DG had an "on-again/off-again romantic relationship during the course of 2013. COMPLAINT, ¶13.

6.  On May 2, 2014, Plaintiff and DG attended an Ultimate Frisbee team party following the

end of year banquet. Plaintiff then asked DG to walk her home to her dorm. Instead, DG guided her to his house. COMPLAINT, ¶14

7. That evening and morning of May 3, 2014, Plaintiff alleges that non-consensual sexual intercourse occurred between her and DG. Plaintiff alleges that she lacked consent. COMPLAINT, ¶15.

8. On May 10, 2014, Plaintiff and DG got into a heated argument via text messaging. COMPLAINT, ¶17.

9. Plaintiff and her friend, Lindsey W., text messaged each other and Lyndsey told Plaintiff that she was at DG's house where there was a party in progress, and encouraged Plaintiff to meet her at DG's house. COMPLAINT, ¶18.

10. That night, on May 10, 2014, Plaintiff Erica Neuburger arrived at DG's house whereupon a physical altercation took place as between Plaintiff and DG. COMPLAINT, ¶19.

11. Plaintiff was calmed down by Lindsey W. and another friend, and eventually she was driven home to her dormitory by another friend. COMPLAINT, ¶20.

12. On May 12, 2014, Plaintiff sought medical care for bruises and swelling she suffered following the fight with DG. COMPLAINT, ¶21.

13. On that same date, Plaintiff went to speak to the University Police about the altercation she had with DG, and was told that because the altercation occurred off campus, at DG's off-campus house, the University Police lacked jurisdiction to investigate the matter.

COMPLAINT, ¶22.

14. University Police advised Plaintiff to speak with the appropriate SUNY Brockport personnel overseeing "Student Conduct". COMPLAINT, ¶23.

15. On May 16, 2014, Plaintiff spoke with Anna Barrone who informed her about the possibility of obtaining an "Order of No Contact" via email, but she did not give Plaintiff any specific of written direction on how to pursue such recourse. COMPLAINT, ¶24.

16. On July 8, 2014, Plaintiff met with Anna Barrone of SUNY Brockport to discuss, for the first time, the forcible sexual assault that occurred on the evening of May 2, 2014, when Plaintiff and DG had sexual intercourse without her consent. COMPLAINT, ¶25.

17. Anna Barrone told Plaintiff that she had contacted DG, the student accused of sexually assaulting Plaintiff, and asked Plaintiff for dates of availability in mid-August for purposes of scheduling a hearing date in regards to the sexual assault allegations against DG. COMPLAINT, ¶26.

18. On July 29, 2014, Anna Barrone emailed Plaintiff to inform her that she decided to transfer to another college, and further informed Plaintiff that another individual would be taking over the day to day affairs of the sexual assault allegations/case. Anna Barrone did not specify who exactly would be taking over the case in her stead. COMPLAINT, ¶27.

19. Finally, on August 7, 2014, Anna Barrone informed Plaintiff that "Michele Reed" would be taking over the case for her, yet Plaintiff did not hear from Ms. Reed and had to reach

out to Reed herself later that same month. This began the pattern on the part of Defendant of delaying or not properly or timely investigating Plaintiff's allegations of sexual assault against DG. COMPLAINT, ¶28.

20. On August 25, 2014, Plaintiff reached out to Ms. Reed about the matter and to arrange a meeting to discuss it. Defendant, by and through Ms. Reed, offered to meet Plaintiff on August 28th, thus continuing to delay dealing with Plaintiff's case. COMPLAINT, ¶29.

21. On September 6, 2014, Michele Reed informed Plaintiff that she had met with DG and reviewed Plaintiff's allegations with him. Reed further asked if Plaintiff was available for a hearing on September 17, 2014. Plaintiff agreed to that date and was then instructed to prepare and submit a written statement concerning her allegations, along with a list of witness(es) by or before Tuesday, September 9, 2014. COMPLAINT, ¶30.

22. On September 11, 2014, Michele Reed informed Plaintiff of an adjournment of the hearing previously scheduled for September 17, 2014. Ms. Reed claimed that the adviser assigned to DG by the school had stepped down due to a conflict of interest. Ms. Reed asked if October 1st works as a hearing date. COMPLAINT, ¶31.

23. On September 15, 2014, Plaintiff expressed concerns to Michele Reed about the postponement of the hearing. COMPLAINT, ¶32.

24. On September 17, 2014, Michele Reed informed Plaintiff that DG was going to send her a statement the following day (September 18th) and that said statement would then be given to Plaintiff. COMPLAINT, ¶33.

25. On September 18, 2014, Michele Reed informed Plaintiff that DG would not be taking an attorney as his adviser and set September 26th as a "tentative" hearing date for Plaintiff's sexual assault allegations against DG. COMPLAINT, ¶34.

26. On September 22nd, still having never received any statement from DG as she was previously promised by Defendant, Plaintiff emailed Michele Reed, SUNY Brockport's agent, requesting any documentation DG had submitted, so that she could go over same with her then-attorney. Michele Reed informed Plaintiff that DG had not submitted a formal statement. Michele Reed also informed Plaintiff that copies of promised text messages had not yet been provided by DG, but promised to ask DG for a copy of said text messages once again. COMPLAINT, ¶35.

27. At some point, Defendant once again cancelled and postponed the sexual assault hearing that had been tentatively scheduled for September 26, 2014, once again prolonging the process for Plaintiff Erica Neuburger. COMPLAINT, ¶36.

28.  On September 23, 2014, Plaintiff sent Michele Reed an email asking to clarify the status of the investigation into her allegations of sexual assault against DG. Plaintiff relayed to Michele Reed that she was available on October 10, 2014 for a hearing. COMPLAINT, ¶37.

29. On October 6, 2014, Plaintiff emailed her contact at SUNY Brockport about the status of the investigation and expressed her frustration at the lack of efficiency on the part of SUNY Brockport to process her sexual assault matter. COMPLAINT, ¶38.

30. It was not until that date, October 6, 2014, nearly 3 months following the date that

Plaintiff initially relayed her sexual assault allegation to SUNY Brockport that Defendant finally recommended to Plaintiff that she start counseling with Sandra Vazquez and connect with Karen Logsdon (Title IX Coordinator) about the process. COMPLAINT, ¶39.

31. On October 7, 2014, Plaintiff informed Anna she spoke with Karen Logsdon at SUNY Brockport regarding her sexual assault allegations. COMPLAINT, ¶40.

32. On October 8, 2014, SUNY Brockport gave Plaintiff a copy of the Investigative Findings Report for her case. COMPLAINT, ¶41.

33. Yet again, on October 9, 2014, Defendant adjourned the hearing. Plaintiff, on that date, agreed to have the hearing convened on October 17th. COMPLAINT, ¶42.

34. Yet again, on October 9, 2014, Defendant postponed the sexual assault hearing. Michele Reed asked Plaintiff if she was available on October 24, 2014 for hearing. COMPLAINT, ¶43

35. On October 17, 2014, after the hearing had yet again been put off by SUNY Brockport, Plaintiff received an official Notice of Hearing scheduling the hearing for October 31, 2014. COMPLAINT, ¶44.

36. On October 24th, Michele Reed sent Plaintiff documentation relating to the hearing. DG's statement contained an allegation of assault against Plaintiff relating to the late night physical altercation on May 12, 2014. It was not until that date; October 24, 2014 that Plaintiff first learned of said "assault" charge being filed against her. She interpreted

the allegations as an attempt by DG to turn the tables on her, and to essentially put the spotlight on her, rather than to focus on the issue at hand; the sexual assault allegations. COMPLAINT, ¶45.

37. On October 28, 2014, Plaintiff was informed of a hearing location change. COMPLAINT, ¶46.

38. On October 28, 2014, Plaintiff contacted SUNY Brockport's "Kristen" about   wanting to file assault charges against DG. COMPLAINT, ¶47.

39. On that same date, Plaintiff e-mailed to Defendant, by and through "Sara", concerns she had about DG abusing SUNY Brockport's conduct system by being permitted to transform what was supposed to be a sexual assault hearing into an assault hearing against Plaintiff. Those concerns fell on deaf ears. COMPLAINT, ¶48.

40. On October 29, 2014, Defendant informed Plaintiff that, once again, the hearing would not take place on the scheduled date of October 31st, but would be postponed once again. Plaintiff was told that Defendant was sending the case to an "external review". COMPLAINT, ¶49.

41. On October 30th, Kate told Plaintiff she will be contacting the school's attorney to check on the status of her case. This is the first time DG and Sokolow try to negotiate the assault charges for the nonconsensual sexual intercourse charges. Negotiations ensued but failed to result in any resolution. COMPLAINT, ¶50.

42. On November 17th Sara emailed Plaintiff indicating that the external reviewer had

concluded that the sexual misconduct case should go to a hearing. She also discovered on this date that her allegations of physical assault relating to the May 12th altercation were not to be considered at hearing. COMPLAINT, ¶51.

43. The Sexual Misconduct hearing took place on November 21st.   COMPLAINT, ¶52.

44. On November 22nd, Plaintiff informed "Kristen" that she would like an informal administrative hearing for her assault charge against DG. The hearing date was scheduled for Tuesday, November 25th. COMPLAINT, ¶53.

45. On November 24th, Plaintiff received a phone call and email from "Sara" with the verdict of the sexual misconduct hearing. DG was found "Not Responsible". COMPLAINT, ¶54.

46. On November 26th, Plaintiff received the verdict of the assault hearing against DG. She was held "Responsible" for assault and not responsible for dating violence. COMPLAINT, ¶55.

47. Following the hearing in November of 2014, and the decision that DG was "not responsible", Plaintiff appealed by letter shortly thereafter, urging SUNY Brockport to reconsider and to find DG responsible and expressing her concerns with DG getting away with nonconsensual sexual intercourse with her. Plaintiff further expressed the need for consequences to DG for his alleged actions, lest he re-commit the alleged sexual assault upon another innocent, non-consenting female student. COMPLAINT, ¶56.

48. In her appeal letter, Plaintiff reminded SUNY Brockport that leniency in the

circumstances of a sexual assault only serve to encourage that behavior to be committed again and again. COMPLAINT, ¶57.

49. Notably, during the November hearing, DG, the accused, said he believed having sexual intercourse with Plaintiff while the two were intoxicated was a "non-issue" because the two happened to have had sexual intercourse before that date. COMPLAINT, ¶58.

50. During the hearing, SUNY Brockport negligently allowed DG to call witnesses that had no personal knowledge or information relevant to the night of the alleged nonconsensual sexual intercourse on May 2nd. Said witnesses were called for the sole apparent purpose of attacking Plaintiff's character. COMPLAINT, ¶59.

51. The process was supposed to be "transparent", yet for weeks Plaintiff was not told about the status of the investigation, or the reasons for delays in the investigation. COMPLAINT, ¶60.

52. DG, the accused, was allowed to miss many deadlines, extending the process unnecessarily. For example, Plaintiff received a phone call one day from the coordinator indicating that DG, the accused, had not submitted copies of certain text messages by the deadline he was given. However, said text messages were still allowed to be included in DG's defense, as evidence in the hearing. At the hearing, the accused's uncle, serving as his adviser, was permitted to speak directly to Plaintiff on several occasions, causing her unnecessary anxiety, and pressure. As an adviser, he did not have permission to speak to Plaintiff at the hearing. COMPLAINT, ¶62.

53. By concluding that the accused was "not responsible" for the sexual assault. SUNY

Brockport essentially passed that responsibility on to Plaintiff, unjustly. It was uncontested that Plaintiff was highly intoxicated on the night in question, and brought to a house that she vocally had expressed not wanting to go to. She physically resisted against DG's attempts to have sex with her until she lacked the physical strength to do fight off his advances, at which point, DG engaged in non-consensual sex with Plaintiff. COMPLAINT, ¶63.

54. By allowing DG to get away with sexual assault, SUNY Brockport acted negligently and also created a sexually hostile environment for which it should be held liable. COMPLAINT, ¶64.

55. Defendant failed to properly train and educate their employees, including school officials, officers, investigators, and adjudicators in appropriate responses to allegations of sexual harassment, sexual abuse, and retaliatory conduct, as well as necessary Title IX policies and procedures. COMPLAINT, ¶65.

56. Defendant failed to adequately educate SUNY Brockport students, including but not limited to DG, on the dangers of sexual assault, including but not limited to the impact of such conduct on victims. COMPLAINT, ¶66.

57. Defendant acted with deliberate indifference towards Erica Neuburger's reports of sexual assault perpetrated by DG against Neuburger as reflected by Defendants' actions and inaction. COMPLAINT, ¶67.

58. As a result of Defendant's actions and inaction in response to Neuburger's report of sexual assault, Plaintiff Erica Neuburger was deprived of a multitude of educational

opportunities and/or benefits. She suffered a decline in her academic performance. COMPLAINT, ¶68.

59. Additionally, Defendant's actions and inaction caused Plaintiff to miss various other educational opportunities and commitments. For example, Plaintiff avoided various social events for fear of running into DG. COMPLAINT, ¶69

60. In February 2015, the United States Department of Education, Office for Civil Rights, accepted Plaintiff's complaint against the Defendant alleging that it failed to respond promptly and equitably to her report of a forcible sexual assault, which complaint was relayed in July 2014, thereby subjecting Plaintive to a "sexually hostile environment" in the ensuing months of August-November of 2014.   COMPLAINT, ¶70.

61. Plaintiff Erica Neuburger was retaliated against by SUNY Brockport insofar as it refused to allow her to rejoin Defendant's "Ultimate Frisbee" Team during the fall of 2014, because she had made the allegations of Sexual assault against DG. COMPLAINT, ¶71.

62. Thus far, despite giving the OCR adequate and ample time to investigate the charges, the OCR has failed to intervene adequately on Plaintiff's behalf, thus necessitating this lawsuit. COMPLAINT, ¶72.

## IV.   <u>STANDARD OF REVIEW ON 12 (b) (6) MOTION</u>:

In reviewing a motion to dismiss for failure to state a claim brought pursuant to <u>Fed R. Civ. P. 12(b)(6)</u>, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences from those allegations in the light most favorable to the plaintiff. See

*Albright v. Oliver*, 510 U.S. 266, 268, 114 S. Ct. 807, 127 L. Ed. 2d 114 (1994); *Burnette v. Carothers,* 192 F.3d 52, 56 (2d Cir. 1999). The complaint may be dismissed only if "it appears beyond doubt, even when the complaint is liberally construed, that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hoover v. Ronwin,* 466 U.S. 558, 587, 104 S. Ct. 1989, 80 L. Ed. 2d 590 (1984) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)). In deciding such a motion, the "issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Bernheim v. Litt*, 79 F.3d 318, 321 (2d Cir. 1996).

## V.    STANDARD UNDER TITLE IX

In order to state a claim under Title IX, a plaintiff must allege that she/he has been "excluded from participation in, . . . denied the benefits of, or . . . subjected to discrimination under" any educational program receiving federal funding on the basis of gender. 20 U.S.C. § 1681(a). "Discrimination" is defined as disparate provision of programs, aid, benefits or services or inequitable application of rules or sanctions. *See* 45 C.F.R. § 86.31. It includes *quid pro quo* sexual harassment as well as claims for unlawful retaliation. In a Title IX suit for gender discrimination, an educational institution may be held liable under standards similar to those applied in employment discrimination cases under Title VII. *See* *Torres v. Pisano*, 116 F.3d 625, 630 n. 3 (2nd Cir.), *cert. denied*, 522 U.S. 997, 118 S. Ct. 563, 139 L. Ed. 2d 404 (1997); *Murray v. New York Univ. Coll. of Dentistry*, 57 F.3d 243, 248 (2d Cir. 1995).

Title IX provides, with certain exceptions not at issue here, that "no person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or

be subjected to discrimination under any education program or activity receiving Federal

financial assistance." 20 U.S.C. § 1681(a).

Congress authorized an administrative enforcement scheme for Title IX. Federal

departments or agencies with the authority to provide financial assistance are entrusted to

promulgate rules, regulations, and orders to enforce the objectives of § 1681, see § 1682, and

these departments or agencies may rely on "any . . . means authorized by law," including the

termination of funding, *ib*id. to give effect to the statute's restrictions.

The Supreme Court decision in  *Davis v. Monroe County Bd. of Educ., 526 U.S. 629, at*

*646-47; 119 S. Ct. 1661, 143 L. Ed. 2d 839, 1999 U.S. LEXIS 3452, 67 U.S.L.W. 4329, 99 Cal.*

*Daily Op. Service 3861, 99 Daily Journal DAR 4931, 1999 Colo. J. C.A.R. 2948, 12 Fla. L.*

*Weekly Fed. S 280 (U.S. May 24, 1999)* was instructive to the present case insofar as it

concluded as follows:

> "Where, as here, the misconduct occurs during school hours and on school grounds -
> - the bulk of G. F.'s misconduct, in fact, took place in the classroom -- the
> misconduct is taking place "under" an "operation" of the funding recipient. See *Doe*
> v. *University of Illinois*, 138 F.3d at 661 (finding liability where school fails to
> respond properly to "student-on-student sexual harassment that takes place while the
> students are involved in school activities or otherwise under the supervision of
> school employees"). In these circumstances, the recipient retains substantial control
> over the context in which the harassment occurs. More importantly, however, in this
> setting the Board exercises significant control over the harasser. We have observed,
> for example, "that the nature of [the State's] power [over public schoolchildren] is
> custodial and tutelary, permitting a degree of supervision and control that could not
> be exercised over free adults." *Vernonia School Dist. 47J* v. *Acton*, 515 U.S. 646,
> 655, 132 L. Ed. 2d 564, 115 S. Ct. 2386 (1995). On more than one occasion, this
> Court has recognized the importance of school officials' "comprehensive authority . .
> . , consistent with fundamental constitutional safeguards, to prescribe and control
> conduct in the schools." *Tinker* v. *Des Moines Independent Community School Dist.*,
> 393 U.S. 503, 507, 21 L. Ed. 2d 731, 89 S. Ct. 733 (1969); see also *New Jersey* v. *T.
> L. O.*, 469 U.S. 325, 342, n. 9, 83 L. Ed. 2d 720, 105 S. Ct. 733 (1985) ("The
> maintenance of discipline in the schools requires not only that students be restrained

from assaulting one another, abusing drugs and alcohol, and committing other crimes, but also that students conform themselves to the standards of conduct prescribed by school authorities"); 74 F.3d at 1193 ("The ability to control and influence behavior exists to an even greater extent in the classroom than in the workplace . . ."). The common law, too, recognizes the school's disciplinary authority. See Restatement (Second) of Torts § 152 (1965). We thus conclude that recipients of federal funding may be liable for "subjecting" their students to discrimination where the recipient is deliberately indifferent to known acts of student-on-student sexual harassment and the harasser is under the school's disciplinary authority."

Section 901 (a) of Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Title IX thus prohibits discrimination against any student based on gender in educational programs receiving federal funding. The Supreme Court has recognized an implied private right of action under Title IX for which both injunctive relief and damages are available. *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 255, 129 S. Ct. 788, 172 L. Ed. 2d 582 (2009) (citations omitted).

**Deliberate Indifference:**

In *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 118 S. Ct. 1989, 141 L. Ed. 2d 277 (1998), where a teacher had a sexual relationship with an eighth-grade student that was not reported to school officials and the student sued the school district under Title IX. *Id.* at 277-78. The Court held, with respect to the school district, that "a damages remedy will not lie under Title IX unless an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has actual knowledge of discrimination in the recipient's programs and fails adequately to respond." *Id.* at 290. In elaborating on what amounts to a failure to adequately respond, the Supreme Court held that the

response must amount to "deliberate indifference" — or "an official decision by the recipient not to remedy the violation." *Id.* at 290-91.

One year after *Gebser*, in *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 119 S. Ct. 1661, 143 L. Ed. 2d 839 (1999), the Supreme Court extended damages liability for Title IX funding recipients to cases of student-on-student harassment, but only where the Title IX recipient acted with actual knowledge of acts of harassment and with deliberate indifference. The *Davis* Court elaborated on its decision in *Gebser*:

[In *Gebser*], we rejected the use of agency principles to impute liability to the district for the misconduct of its teachers. Likewise, we declined the invitation to impose liability under what amounted to a negligence standard — holding the district liable for its failure [*604] to react to teacher-student harassment of which it knew or *should have known*. Rather, we concluded that the district could be liable for damages only where the district itself intentionally acted in clear violation of Title IX by remaining deliberately indifferent to acts of teacher-student harassment of which it had actual knowledge. . . . [T]he misconduct of the teacher in *Gebser* was not 'treated as the grant recipient's actions.' Liability arose, rather, from 'an official decision by the recipient not to remedy the violation.' By employing the 'deliberate indifference' theory . . ., we concluded in *Gebser* that recipients could be liable in damages only where their own deliberate indifference effectively 'cause[d]' the discrimination. The high standard imposed in *Gebser* sought to eliminate any 'risk that the recipient would be liable in damages not for its own official decision but instead for its employees' independent actions.'"

A plaintiff's burden at the *prima facie* stage to offer evidence of circumstances giving rise to an inference of discrimination is "'minimal' and '*de minimis*.'" *Zimmermann v. Assocs. First Capital Corp.*, 251 F.3d 376, 381 (2d Cir. 2001)(quoting Byrnie v. Town of Cromwell, 243 F.3d

93, 101 (2d Cir. 2001); *Abdu-Brisson v. Delta Air Lines, Inc.,* 239 F.3d 456, 467 (2d Cir. 2001)).

Plaintiff has more than satisfied her pleading requirements for purposes of alleging a prima facie

case of discrimination under Title IX insofar as:

Plaintiff has satisfied her pleading requirement with respect to her allegations of Title IX

discrimination pursuant to Fed. R. Civ. P. 8(a), which requires only that a complaint contain "a

short and plain statement of the claim showing that the pleader is entitled to relief." *Twombly,*

550 U.S. at 570. Fed. R. Civ. P. 8(d)(1) requires that each allegation be "simple, concise, and

direct."  Fed. R. Civ. P. 8(a)(2) requires that the plaintiff must show "more than labels and

conclusions, and a formulaic recitation of the elements of a cause of action will not do."

*Twombly,* 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the

speculative level [.]" *Id.* As a result, Defendant's Motion to dismiss should be denied in tis

entirety.

## VI.     IN HER COMPLAINT, THE PLAINTIFF  HAS MORE-THAN-ADEQUATELY PLED A PRIMA FACIE CASE OF GNEDER DISCRIMINATION/HOSTILE ENVIRONMENT:

Fed. R. Civ. P. 8(a) requires that a complaint contain "a short and plain statement of the

claim showing that the pleader is entitled to relief." *Twombly,* 550 U.S. at 570. Fed. R. Civ. P.

8(d)(1) requires that each allegation be "simple, concise, and direct." Fed. R. Civ. P. 8(a)(2)

requires that the plaintiff must show "more than labels and conclusions, and a formulaic

recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555. "Factual

allegations must be enough to raise a right to relief above the speculative level[.]" *Id.*

As elucidated above, Plaintiff has alleged facts sufficient to make out a prima facie

complaint for discrimination. The onus, at the present stage of litigation is not, as Defendant

would apparently have this court believe, for Plaintiff to prove her complaint by a preponderance

of the evidence, but simply to proffer allegations that are: "simple, concise, and direct." Fed. R.

Civ. P. 8(a)(2). Plaintiff has more-than satisfied this minimalist pleading standard as required by

the Federal Rules of Civil Procedure.

Defendant is mistaken in alleging pleading deficiencies in that the Complaint. It is replete

with allegations – particular facts – casting doubt on the accuracy of the outcome of the

disciplinary process. See Complaint, Paragraph 56, as one example of such an allegation.  See

Paragraph 57 of Complaint wherein Plaintiff alleges that SUNY's "…leniency in the

circumstances of a sexual assault only serve to encourage that behavior to be committed again.

See also Complaint, Paragraphs 58, where the Plaintiff accused the Defendant of ratifying DG's

justification for having sexual intercourse with her while both were allegedly intoxicated when

DG allegedly stated that sex was a "non-issue" because the two had happened to have been

sexually intimate prior to that date. It is difficult to imagine a scenario in which Plaintiff could

have been more specific in her 72 factual allegations within her complaint. The Complaint

speaks for itself, and it certainly satisfies the pleading requirements for purposes of a Federal

Court Complaint.

Indeed, to survive a motion to dismiss, a party need only plead "a short and plain

statement of the claim," *see* Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'show that the

pleader is entitled to relief[,]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557, 127 S. Ct. 1955,

167 L. Ed. 2d 929 (2007) (quotation omitted). Plaintiff has more-than-satisfied this minimal

standard. Under this standard, the pleading's "[f]actual allegations must be enough to raise a right

of relief above the speculative level," *see id*. at 555 (citation omitted), and present claims that are

"plausible on [their] face," *id*. at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of "entitlement to relief." *Id*. (quoting [*Twombly*, 550 U.S.] at 557, 127 S. Ct. 1955, 167 L. Ed. 2d 929).  Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to [518] plausible, the complaint must be dismissed." *id*. at 570.

"The *Iqbal* plausibility standard applies in conjunction with employment discrimination pleading standards." *Gillman v. Inner City Broad. Corp*., No. 08 Civ. 8909, 2009 U.S. Dist. LEXIS 85479, 2009 WL 3003244, *3 (S.D.N.Y. Sept. 18, 2009). Employment discrimination claims need not contain specific facts establishing a *prima facie* case of discrimination, *see Swierkiewicz v. Sorema N.A*., 534 U.S. 506, 514-15, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002); rather, an employment discrimination complaint "must include only a short and plain statement of the claim . . . [that] give[s] the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests," *id*. at 512 (quotation marks and citations omitted); *see also Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (applying *Swierkiewicz* to NYSHRL discrimination claims).

Yet Defendant, by its motion, is apparently attempting to hold Plaintiff to a heightened standard that simply does not exist. In so doing, it willfully excludes the foregoing case law which demonstrates that Defendant's motion is simply a waste, not only of Plaintiff's time and

resources, but more importantly, of this honorable court. If Defendant were to be believed, Plaintiff would essentially be duty-bound to prove discrimination and retaliation within and by her Complaint, by a preponderance of the evidence. This is an absurd position to take this early on in the litigation.

## VII.   __NEGLIGENCE CLAIM__:

As the Supreme Court of the United States has asserted, ancillary jurisdiction is appropriate for two separate, though sometimes related, purposes: (1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent,  see, *e. g., Baker* v. *Gold Seal Liquors, Inc.*, 417 U.S. 467, 469, n. 1, 41 L. Ed. 2d 243, 94 S. Ct. 2504 (1974);*Moore* v. *New York Cotton Exchange*, 270 U.S. 593, 610, 70 L. Ed. 750, 46 S. Ct. 367 (1926); and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees, see, *e. g., Chambers* v. *NASCO, Inc.*, 501 U.S. 32, 115 L. Ed. 2d 27, 111 S. Ct. 2123 (1991) (power to compel payment of opposing party's attorney's fees as sanction for misconduct); *United States* v. *Hudson*, 11 U.S. 32, 7 Cranch 32, 34, 3 L. Ed. 259 (1812) (contempt power to maintain order during proceedings). See generally 13 *C. Wright, A. Miller, & E. Cooper,* Federal Practice and Procedure § 3523 (1984); cf.  28 U.S.C. § 1367 (1988 ed., Supp. IV).

Furthermore, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. § 1367(a).

In the case at bar, analyzing whether the negligence count would ordinarily lack original jurisdiction, on its own, in the Federal District Court is unnecessary as a result of the fact that the claim is supplemental to the Title IX claims properly before the court pursuant to original jurisdiction. The facts on which the negligence claim is based are almost identical and inseparable from the facts which form the basis for the Title IX claim.

As for whether Plaintiff has adequately pled negligence, she has for the reasons that follow: Plaintiff's Complaint is replete with facts alleging Defendant's breach of its duty of care to Plaintiff; NOT to prevent the initial alleged sexual assault, about which Plaintiff is not suing Defendant in her Complaint, but in how defendant dealt with the processing of the sexual assault complaint. Plaintiff wasn't asked to submit a written statement about her alleged sexual assault until September 6, 2014, despite having notified the school weeks earlier about the alleged assault. (Complaint, Paragraphs, 25-30).  The Plaintiff alleged that Defendant postponed the hearing and the process generally, not just once or twice, but on *several* occasions and that she had repeatedly *complained* about such delay. (See, for example, Complaint, Paragraphs 31, 32, 34, 35, 36, 37, 38, 42, 43, 44, 49). Most notably, it was not until October 6, 2014, more than 3 months after Plaintiff had notified the Defendant/school of her allegations concerning sexual assault that Defendant/school finally recommended counselling with Sandra Vasquez and the Title IX Coordinator, Karen Lodgson. (Complaint, Paragraph 39).  Plaintiff also alleged that the school allowed DG to turn her (Plaintiff) into the accused when it allowed DG to use an assault charge against Plaintiff as counter-leverage to her sexual assault charge. (Complaint, Paragraph 45-50).  Plaintiff even alleged that the entire process, which was represented to be "transparent" by the school was anything but transparent, but was fraught with incessant delays that left

Plaintiff, the ostensible victim, in the dark. (Complaint, Paragraph 60).

Plaintiff alleged negligence when the school found DG "Not Responsible"(Complaint, Paragraphs 63, 64). She also duly alleged that the school failed to properly train and educate their employees, including  school officials, investigators and adjudicators in appropriate responses to allegations of sexual harassment, sexual abuse and retaliation as well as Title IX policies and procedures. (Complaint, Paragraph 65).

Plaintiff alleged negligence in terms of its failure to train and educate students at the school on the foregoing, as well as on the harm and damage that sexual assault has on victims. (Complaint, Paragraph 66). Most important, Plaintiff duly alleged Defendant's "deliberate indifference towards Erica Neuburger's reports of sexual assault perpetrated by DG" against her. Complaint, Paragraph 67.

Contrary to Defendant's assertion, Plaintiff duly alleged that the negligence harmed her. See, for example, Complaint, Paragraph 68, where Plaintiff alleges that as a result of "Defendant's actions and inaction in response to Neuburger's report of sexual assault, Plaintiff Erica Neuburger was deprived of a multitude of educational opportunities and/or benefits. She suffered in her academic performance."

## VIII.   **RETALIATION:**

Plaintiff does not dispute the case law related to the formulation of a prima facie case of retaliation under Title IX. However, she did properly plead retaliation insofar as she very clearly alleged, in Paragraph 71 of her Complaint:

"Plaintiff Erica Neuburger was retaliated against by SUNY Brockport insofar as it refused to allow her to rejoin Defendant's "Ultimate Frisbee" Team during the fall of 2014, because she

had made the allegations of Sexual assault against DG."

Nothing could be more clear than the foregoing allegation. It specifies that Defendant did not allow her to participate in an activity (Ultimate Frisbee). It alleges that the motivation for that deprivation was retaliation for Plaintiff's having filed a sexual assault complaint against DG. If taken as true, the allegation properly alleges retaliation. She has met the pleading requirements Plaintiff has satisfied her pleading requirement with respect to her allegations of Title IX discrimination pursuant to Fed. R. Civ. P. 8(a), which requires only that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." _Twombly,_ _550 U.S. at 570._ Fed. R. Civ. P. 8(d)(1) requires that each allegation be "simple, concise, and direct. She has accomplished that not just with respect to retaliation, but with respect to gender discrimination, and negligence. Plaintiff's complaint is replete with allegations of how she was harmed, including but not limited to pages 11-15 of the Complaint.

## IX.     **PUNITIVE DAMAGES**:

Plaintiff does not dispute that punitive damages are unavailable as against government or government subdivisions. Rather, in the exercise of cautious pleading, Plaintiff asserted a claim for Punitive damages to the extent this court concluded that Defendant was not tantamount to a State agency, such that it might be liable for punitive damages. Therefore, to the extent this court determines that Defendant SUNY is in fact a subdivision of the government; Plaintiff does not dispute Defendant's position with respect to punitive damages. See 42 U.S.C. § 1981a(b)(1) (authorizing punitive damages under Title VII except against "a government, government agency or political subdivision".

X.      **CONCLUSION**

Based on the foregoing facts as alleged by Plaintiff in her Complaint discrimination, negligence, hostile environment, and unlawful retaliation, it can properly be inferred that she suffered actionable harm while a student at SUNY Brockport. In deciding such a motion, the "issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." If true, Plaintiff's claims are actionable. Therefore, and for the foregoing reasons, Plaintiff respectfully requests that Defendant's Motion to Dismiss be denied in its entirety and that Plaintiff be permitted to be heard.

Respectfully Submitted,

S:// James D. Hartt
**JAMES D. HARTT, ESQ.,**
**Attorney For Plaintiff-Admitted to**
**Practice in WDNY Federal Court**

**70 Linden Oaks, Third Floor**
 **Rochester, NY 14625**
**Telephone: (585) 490-7100**
 **Fax: (585) 425-0579**

ORIGINAL of the foregoing was
filed this 14th Day of September, 2017 with:
The Clerk of the Federal District Court
Western District New York District